IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

COQUICO, INC.,

       Plaintiff

          v.

ANGEL EDGARDO RODRIGUEZ-MIRANDA,
et al.,

       Defendants

CIVIL NO. 07-1432 (JP)

## OPINION AND ORDER

The Court has before it Plaintiff Coquico, Inc.'s ("Coquico") motion for a preliminary injunction (No. 2). Plaintiff alleges it designed and manufactures "Coquí Común," a Puerto Rican Tree Frog plush toy (hereinafter referred to as "coquí"), among other souvenirs. Coquico states that its coquí is subject to copyright protection under the Copyright Act, and is registered with the United States Copyright and Trademark Office. Plaintiff further alleges that Defendants Angel Edgardo Rodríguez-Miranda ("Rodríguez") and Identiko, Inc., infringed Plaintiff's copyrights by manufacturing and distributing an unauthorized copy of Plaintiff's coquí, and selling the products to many of Plaintiff's clients.

On August 27, 2007, the Court denied Defendants' motion for summary judgment (No. 31) as to Defendants' arguments that (1) Plaintiff's coquí is not copyrightable because the coquí exists and originated in nature and is not an original work, and

CIVIL NO. 07-1432 (JP)          -2-

(2) alternatively, Defendants' product is sufficiently different from Plaintiff's product so that there is no copyright infringement.  The Court granted Plaintiff's request for a Preliminary Injunction Hearing, and the same was held on August 28 and 29, 2007.  At the Hearing, the Court ordered the parties to file briefs in support of their positions on or before September 12, 2007.

After considering the testimony and evidence set forth at the Preliminary Injunction Hearing and the arguments made in the parties' briefs, the Court hereby **GRANTS** Plaintiff Coquico's motion for a preliminary injunction (**No. 1**).

## I.    UNCONTESTED FACTS

The following facts were deemed uncontested by the Court in its Opinion and Order (No. 31) because they were included in the motion for summary judgment and opposition and were agreed upon, or they were properly supported by evidence and not genuinely opposed.

1.    Malik Benin, founder and President of Coquico, Inc., worked together with the Supon Design Group, based in Washington D.C., in order to launch the manufacturing and distribution of plush toy versions of Puerto Rico's indigenous tree frog, the coquí.

2.    Since June 22, 2001, Plaintiff Coquico's work identified as Coquí Común, and authored by Michael Tian as a work made for hire for Coquico, has been registered with the United States Copyright Office.

CIVIL NO. 07-1432 (JP)          -3-

3.  Ángel Edgardo Rodríguez-Miranda is the President of Defendant Identiko, Inc.

4.  Identiko, Inc. sells stuffed coquí toys, as well as key chains, regular plush toys, suction plush toys and back packs.

5.  On May 15, 2007, Plaintiffs filed an action against Ángel E. Rodríguez-Miranda and Identiko, Inc., for copyright infringement.

6.  The coquí is a common national symbol in Puerto Rico.

7.  Coquí depictions are often sold in gift shops.

8.  The Coquí Común is the most recognizable coquí, hence its name.

9.  The colors in the Coquí Común are different shades of brown.

Additionally, the following facts were established through witness testimony at the Preliminary Injunction Hearing before this Court on August 28 and 29, 2007.

1.  Coquico produces and has in the market a line of plush toy animals based on animals endemic to Puerto Rico.

2.  Coquico produces and has in the market a line of products based on its products called Común by Coquico, which is a plush toy coquí, and Tata, a plush toy Puerto Rican parrot. Coquico also created Rufus, a plush toy Puerto Rican bat, which is not yet in the market.

CIVIL NO. 07-1432 (JP)          -4-

3.   Plaintiff created the following products based on the coquí: a backpack, a plush toy with suction cups, a regular plush toy, and a key chain.

4.   Plaintiff created the following products based on the parrot, named Tata: a plush toy and a key chain.

5.   Coquico hired a sound expert in order to prepare the sound chip included inside the plush toys.

6.   Coquico registered the following with the United States Copyright Office, and introduced them as exhibits at the Preliminary Injunction Hearing:

   a.   The Certificate of Registration of the Copyright Office for Común by Coquico (the coquí),

   b.   The Certificate of Recordation of the Copyright Office between Michael Tian and Coquico regarding the Musical Plush Toy Frog Named "Común",

   c.   The Certificate of Registration of the Copyright Office for the hang tag of Común by Coquico,

   d.   The Certificate of Registration of the Copyright Office for the hang tag of Tata[1] by Coquico,

   e.   The Certificate of Registration of the Copyright Office for the Puerto Rican bat named "Rufus" by Coquico.

---

1.   Plaintiff did not submit as an exhibit any Certificate of Registration of the Copyright Office for the actual Tata plush toy, only the hang tag.

CIVIL NO. 07-1432 (JP)          -5-

7.   The hang tags of the products by Coquico have zoological and educational information in them.

8.   Defendant Rodríguez began to work for Coquico around the beginning of the year 2001.

9.   Defendant Rodríguez signed a non-disclosure/non-compete agreement with Coquico sometime in 2002[2].

10.  Defendant Rodríguez worked with Coquico until the year 2005.

11.  Defendant Rodríguez incorporated his company called Identiko, Inc., also a defendant hereto, on January 17, 2002, while he was still working for Coquico.

12.  In February 2006, after leaving Coquico, Defendant Rodríguez contacted persons in China in order to manufacture products under the name "Wild Encantos."

13.  Jiangsu Holly Corporation is the name of the manufacturer in China contacted by Defendant Rodríguez.

14.  Defendant Rodríguez thereafter began to manufacture, distribute and sell stuffed plush coquís and parrots.

15.  Defendant Rodríguez does not own any copyrights or trademarks over the Wild Encantos products.

---

2.   The document is not dated, but states "this _____ date of ____, 2002." See Docket No. 27-6.

CIVIL NO. 07-1432 (JP)            -6-

II.  **PRELIMINARY INJUNCTION STANDARD**

     The general purpose of injunctive relief is to prevent future acts or omissions of the nonmovant that constitute violations of the law or harmful conduct.  United States v. Oregon Med. Soc., 343 U.S. 326, 333, 72 S. Ct. 690, 96 L. Ed. 978 (1952).  The United States Court of Appeals for the First Circuit has set forth a quadripartite test for trial courts to use when considering whether to grant preliminary injunction requests.  Lanier Prof. Serv's, Inc., v. Ricci, 192 F.3d 1 (1st Cir. 1999); Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991).  A preliminary injunction is appropriate if: (1) the petitioner has exhibited a likelihood of success on the merits; (2) the petitioner will suffer irreparable injury if the injunction is not granted; (3) such injury outweighs any harm which granting injunctive relief would inflict on the respondent; and (4) the public interest will not be adversely affected by granting the injunction.  Narragansett Indian Tribe, 934 F.2d at 5; see, e.g., Aoude v. Mobil Oil Corp., 862 F.2d 890, 892 (1st Cir. 1988); Hypertherm, Inc. v. Precision Products, Inc., 832 F.2d 697, 699 & n.2 (1st Cir. 1987).  Whether to issue a preliminary injunction depends on balancing equities where the requisite showing for each of the four factors turns, in part, on the strength of the others.  Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 611-13 (1st Cir. 1988).

CIVIL NO. 07-1432 (JP)            -7-

### III. **ANALYSIS**

####    A.    **Likelihood of Success on the Merits**

Plaintiff Coquico argues that Defendants Rodríguez and Identiko, Inc., violated the Copyright Act in manufacturing, distributing and selling plush toy coquís and parrots identical to those manufactured by Plaintiff.  The Copyright Act, 17 U.S.C. Section 505, provides as follows:

> Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device.

17 U.S.C. § 102(a).  One infringes a copyright when he or she violates one of the exclusive rights to a work held by a copyright owner, and the owner has the right to sue for infringement.  See 17 U.S.C. § 501.  To establish copyright infringement under the Copyright Act, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." T-Peg, Inc. v. Vt. Timber Works, Inc., 459 F.3d 97, 108 (1st Cir. 2006) (quoting Feist Pub'lns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991)); see also Yankee Candle Co. v. Bridgewater Candle Co., 259 F.3d 25, 33 (1st Cir. 2001); Segrets, Inc. v. Gillman Knitwear Co., 207 F.3d 56, 60 (1st Cir. 2000).  Proving the second element of the test, "copying of constituent elements of the work that are original," involves two steps: the plaintiff must show (a)

CIVIL NO. 07-1432 (JP)          -8-

that the defendant actually copied the work as a factual matter, either through direct evidence or through indirect means, see Yankee Candle Co., 259 F.3d at 33; Segrets, 207 F.3d at 60, and (b) that the defendant's copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works substantially similar. T-Peg, Inc., 459 F.3d at 108 (internal citations omitted).

In their brief in opposition to a preliminary injunction, Defendants Rodríguez and Identiko, Inc., argue that Plaintiff's coquí is not original and is therefore not subject to copyright protection. In particular, Defendants argue that the products are based on the coquí as it appears in nature and therefore are bound to have several similarities. However, in this Court's Opinion and Order (No. 31), the Court denied summary judgment as to Defendants' argument that Plaintiff's coquí is not original. In dismissing the argument, the Court stated that many of the characteristics of Plaintiff's coquí do not exist in nature, such as the two hang tags, the button on the coquí's side, and the Puerto Rican flag stitched on the coquí's underside. Also, Plaintiff's stuffed toy coquí is also much larger than the coquí as it appears in nature. Plaintiff combines many standard and non-standard features to create its own original product.

In their brief, Defendants further argue that Plaintiff has failed to establish substantial similarity between the coquís. However, also in its previous Opinion and Order (No. 31), the Court

CIVIL NO. 07-1432 (JP)            -9-

held that a rational fact-finder could conclude that the Plaintiff and Defendants' products are substantially similar.  The parties' coquís are nearly identical in appearance.  They are in the same posture and are approximately the same size.  The eyes on the two coquís are approximately the same distance apart, and the stitching between the eyes and the nose and mouth area is very similar.  The stitching on the coquís' backs appears to be identical.  The ear disks on the two coquís likewise appear nearly identical.  The Defendants' coquí has dark brown feet, which look exactly like Plaintiff's coquí's feet.  The dark brown color of the feet begins at the same place on the coquís' legs.

     Works can be substantially similar despite the presence of disparities.  Johnson v. Gordon, 409 F.3d 12, 14-15 (1st Cir. 2005).  The key is whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the works'] aesthetic appeal as the same."  Id. (quoting Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960)).  The Court finds it likely that an ordinary observer would be disposed to overlook these minor disparities, and that the two coquís are nearly identical in appearance.

     At the Preliminary Injunction Hearing, Plaintiff presented additional evidence in support of its requested preliminary injunction.  In particular, Plaintiff introduced into evidence the many copyright registrations filed with the United States Copyright

CIVIL NO. 07-1432 (JP)          -10-

Office.  However, as illuminated by Defendants, Plaintiff did not present a copyright registration for its plush toy parrot, "Tata." A copyright must be registered prior to bringing an action for infringement.  See 17 U.S.C. § 411(a).  Plaintiff only presented a copyright registration for Tata's hand tag, but not for the Tata parrot toy itself.  Accordingly, the Court will limit any relief to the coquí, and not consider Plaintiff's plush toy parrot.  Apart from the Tata parrot toy, Defendants do not contest the validity of the copyright for any other products created and manufactured by Plaintiff Coquico.

     In conclusion, the Court finds that Plaintiff has a likelihood of success on the merits as to its plush toy coquí.

          **B.   <u>Irreparable Harm</u>**

     Because injury normally can be presumed, the plaintiff in a copyright case is entitled to a preliminary injunction even without a detailed showing of irreparable harm if the plaintiff demonstrates probable success on the merits or a prima facie case of infringement. <u>Concrete Machinery Co., Inc.</u>, 843 F.2d at 611-12.  The Court of Appeals for the Third Circuit also found that a showing of reasonable likelihood of success on the merits raises a presumption of irreparable harm, explaining that where essential copyright material is being copied, a preliminary injunction is appropriate in order to protect the plaintiff's competitive position and significant expenditures of time, effort and money.  <u>Apple Computer, Inc. v.</u>

CIVIL NO. 07-1432 (JP)          -11-

Franklin Computer Corp., 714 F.2d 1240, 1254 (3d Cir. 1983), cert. denied, 464 U.S. 1033 (1984).

In their brief, Defendants' only argument as to the irreparable harm prong is that Plaintiff Coquico's delay of over one year before bringing a claim against Defendants, despite knowledge of the alleged infringement, negates any irreparable harm to Plaintiff.  Several courts have held that a showing of unreasonable delay between the plaintiff's first knowledge of the allegedly infringing acts and the bringing of the injunction negates the presumption of irreparable harm.  See Fritz v. Arthur D. Little, Inc., 944 F. Supp. 95, 98 (1st Cir. 1996) (more than two years delay unreasonable where no showing of likelihood of success on the merits); see also Fabrication Enterprises, Inc. v. Hygenic Corp., 64 F.3d 53, 61 (2d Cir. 1995); Forry, Inc. v. Neundorfer, Inc., 837 F.2d 259, 267 (6th Cir. 1988); Clark Equipment Co. v. Harlan Corp., 539 F. Supp. 561, 570 (D. Kan. 1982) (three years delay unreasonable).

However, Defendant has failed to identify, and the Court has been unable to find, any case where a court determined there was no irreparable harm for delay of a little more than a year, as is the situation here.  Further, many courts have held that even a delay of two years or longer can still be reasonable.  See Forry, Inc., 837 F.2d at 267 (a fourteen month delay is reasonable where the plaintiff is "not unduly dilatory, and does not sleep on its rights"); Meredith Corp. v. Harper & Row Publishers, Inc., 500 F.2d 1221 (2d Cir. 1974);

CIVIL NO. 07-1432 (JP)          -12-

M & A Associates, Inc. v. VCX, Inc., 657 F. Supp. 454
(E. D. Mich. 1987) (nearly two year delay in bringing copyright
action not unreasonable).  Further, some courts have even concluded
that delay cannot rebut a presumption of irreparable harm.  See
Hampton v. Paramount Pictures Corporation, 279 F.2d 100, 105
(9th Cir.), cert. denied, 346 U.S. 882 (1960) (thirteen-year delay
in bringing copyright action reasonable where only future use of
copyright material was enjoined); American Greetings Corp. v.
Kleinfab Corp., 400 F. Supp. 228, 233-34 (S.D.N.Y. 1975) (delay is
not a basis for denial of an injunction where defendant profits
thereby).

     Because Plaintiff's likelihood of success on the merits has been
established, and because Plaintiff did not unduly delay in bringing
this action, the Court likewise determines that there exists a
presumption of irreparable harm.

     **C.   Balance of hardships**

     In Concrete Machinery, the First Circuit also addressed the
balance of hardships in the context of a copyright infringement
action.  The First Circuit explained that any advantages which are
built up as a result of the allegedly infringing activity should not
be measured in assessing the hardship of granting an injunction:

          Such considerations apply even to a business which is
          exclusively based on an infringing activity and which
          would be virtually destroyed by a preliminary injunction.
          It would be incongruous to hold that the more an
          enterprise relies on copyright infringement for survival,

CIVIL NO. 07-1432 (JP)          -13-

> the more likely it will be able to defeat the copyright
> owner's efforts to  have that activity immediately halted.
> We see little reason why an entity should be allowed to
> establish and continue an enterprise based solely on what
> is  in  all  likelihood  copyright  infringement,  simply
> because that is its only business. <u>Concrete Machinery</u>,
> 843 F.2d at 612.

Other circuits concur in this result.  <u>See</u> <u>Helene Curtis
Industries  v.  Church  &  Dwight  Co.</u>,  560  F.2d  1325,  1333
(7th Cir. 1977), <u>cert.</u> <u>denied</u>, 434 U.S. 1070 (1978) ("'Advantages
built upon a deliberately plagiarized make-up do not seem to us to
give the borrower any standing to complain that his vested interests
will be disturbed.'" (citations omitted)); <u>Apple Computer, Inc.</u>,
714 F.2d at 1255 (knowing copier cannot construct its business around
infringement).

Defendants Rodríguez and Identiko, Inc., only cite to damages
they will incur if this Court should order that they cease in the
manufacture and sale of the allegedly infringing coquí.  As set forth
above,  the  Court  will  not  consider  such  damage,  financial  or
otherwise, built up as a result of the allegedly infringing activity.
Accordingly, the balance of hardships weighs almost exclusively in
Plaintiff's favor.

     D.   **<u>Public interest</u>**

The final prong of the test used in determining whether the
Court should grant injunctive relief is whether granting the
injunction will harm the public interest. <u>Concrete Machinery</u> also
established that the fourth and final prong of the preliminary

CIVIL NO. 07-1432 (JP)          -14-

injunction formula does not require an independent showing if there is a demonstrated likelihood of success on the merits.  <u>Concrete Machinery</u>, 843 F.2d at 612.  Specifically, the First Circuit relied on the reasoning articulated by the Court of Appeals from the Third Circuit:

> Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work.  <u>Apple Computer, Inc.</u>, 714 F.2d at 1255.

The public interest rarely is a genuine issue if the copyright owner has established a likelihood of success since the public interest is generally served by upholding copyrights and preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work.  <u>Concrete Machinery Co., Inc.</u>, 843 F.2d at 612; <u>see</u> <u>also</u> <u>Forry, Inc.</u>, 837 F.2d at 259; <u>West Pub. Co. v. Mead Data Cent., Inc.</u>, 799 F.2d 1219 (8th Cir. 1986). Accordingly, the Court finds that protecting Coquico's copyrights against infringement serves the public interest.

**VI.  <u>CONCLUSION</u>**

The Court **GRANTS** Plaintiff's motion for a preliminary injunction, and hereby **ENTERS** the following **ORDER**, effective upon issuance of this "Opinion and Order" and valid until the resolution of this litigation or until the Court rules otherwise:

CIVIL NO. 07-1432 (JP)            -15-

     Defendants, their agents, servants, and related companies, shall be enjoined from infringing Plaintiff's aforesaid copyrights for Plaintiff's stuffed toy coquí line in any manner including, but not limited to, manufacturing, displaying, distributing, offering for sale, selling, shipping, or delivering, infringing copies of Plaintiff's copyrighted works, products and merchandise.

     **IT IS SO ORDERED.**

     In San Juan, Puerto Rico, this 11th day of October, 2007.


                                        s/Jaime Pieras, Jr.
                                       JAIME PIERAS, JR.
                                  U.S. SENIOR DISTRICT JUDGE