IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| COQUICO, INC.,<br><br>        Plaintiff<br><br>        v.<br><br>ÁNGEL EDGARDO RODRÍGUEZ-MIRANDA, et al.,<br><br>        Defendants | CIVIL NO. 07-1432 (JP) |

**OPINION AND ORDER**

A Bench Trial was held in the instant case on August 10, 2010. The parties presented opening statements, testimony from witnesses, and closing arguments. The witnesses who testified were Defendant Ángel Edgardo Rodríguez-Miranda ("Rodríguez"), Guillermo Farre-Morton ("Farre"), Tom Ross ("Ross"), and Malik Benin ("Benin"). The parties argued their respective positions as to the appropriate amount of statutory damages, and the Court took the matter under advisement. On the basis of the evidence presented, the Court has reached the following findings of fact and conclusions of law.

**I.    PROCEDURAL BACKGROUND**

Plaintiff Coquico, Inc. ("Coquico") filed the instant case pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq.*, and the Lanham Act, 15 U.S.C. § 1114, *et seq.* Plaintiff Coquico alleges it designed and manufactures "Coquí Común," a Puerto Rican Tree Frog

CIVIL NO. 07-1432 (JP)          -2-

plush toy.  Coquico states that its coquí is subject to copyright protection under the Copyright Act, and is registered with the United States Copyright and Trademark Office.  Plaintiff further alleges that Defendants Rodríguez and Identiko, Inc. ("Identiko"), infringed Plaintiff's copyrights by manufacturing and distributing an unauthorized copy of Plaintiff's coquí, and selling the products to many of Plaintiff's clients.

Evidence of Defendants' infringement was previously presented at a hearing before the Court on Plaintiff's motion for a Preliminary Injunction.  The Court granted a Preliminary Injunction on October 15, 2007 (No. 47).  Defendants filed an interlocutory appeal challenging the injunction, but following oral argument the United States Court of Appeals for the First Circuit issued an Opinion on April 6, 2009 affirming the Preliminary Injunction (No. 79).

The Court then held a Status Conference, at which the parties agreed to the entry of a Permanent Injunction (No. 89).  The Court entered a Permanent Injunction on December 10, 2009, which orders that: "Defendants, their agents, servants, and related companies, are permanently enjoined from infringing Plaintiff's copyrights for Plaintiff's stuffed toy coquí line in any manner including, but not limited to, manufacturing, displaying, distributing, offering for sale, selling, shipping, or delivering, infringing copies of Plaintiff's copyrighted works, products and merchandise."

CIVIL NO. 07-1432 (JP)          -3-

At the Bench Trial, the parties focused on the issue of damages. In addition, evidence was presented regarding the disputed factual issue of whether Defendants' infringement has been ongoing following the issuance of the Court's Preliminary Injunction. Plaintiff previously elected (No. 135) to obtain statutory damages pursuant to 17 U.S.C. § 504(c), and therefore need not establish the precise amount of its actual damages.

## II.  **FINDINGS OF FACT**

The Court heard testimony which showed that Defendants did infringe Plaintiff's copyright by selling stuffed coquí plush toys that were highly similar to Plaintiff Coquico's product. Evidence of this fact had also been presented previously at the Preliminary Injunction hearing (No. 47). In addition, Defendants' counsel conceded during closing arguments that there had been infringement on the part of Defendants. As such, this fact was not in dispute.

Rodríguez testified that between January 2006 and October 2007, when the injunction was issued, he placed orders with manufacturers in China for products similar to Coquico's products. Rodríguez and Identiko sold said products to retailers in Puerto Rico. This testimony was consistent with the testimony of Farre. Farre worked as store operations manager for Destination Shops between 2004 and 2009. In that role, he was responsible for overseeing the buying and inventory at several gift shops in Puerto Rico. Farre testified that

CIVIL NO. 07-1432 (JP)            -4-

although he had not met Rodríguez personally, he did know Benin, President of Coquico.  He further testified that his stores had previously sold Coquico products, and that at some point around 2006 or 2007 they began to sell both Coquico products and similar Identiko products.

The testimony from Benin of Coquico further supported the conclusion that Defendants infringed Plaintiff's copyrights.  Benin testified that during trips to Puerto Rico he systematically visited gift shops in the San Juan airport, in Condado, Old San Juan, and elsewhere on the island.  In 2006, Benin began to see copies of his products in the stores he visited.  On the basis of the testimony presented by each of the witnesses, the Court finds that the evidence demonstrated the fact that Defendants Rodríguez and Identiko infringed Plaintiff Coquico's copyrights.

The parties disputed the issue of whether sales of infringing products by Defendants continued following the entry of the Court's Preliminary Injunction.  The evidence on this issue was less clear than the evidence of infringement prior to the entry of the Preliminary Injunction.  Benin testified that he has continued to see products in the market which are highly similar to his products, and which bear the Wild Encantos label used by Rodríguez and Identiko. In particular, Benin stated that a competing coquí keychain product remains in the market today.  In addition, Ross, owner of four gift

CIVIL NO. 07-1432 (JP)           -5-

shops in Puerto Rico, testified that his store carries a large coquí toy under the Wild Encantos label, and that he was never instructed by Rodríguez to stop selling said product following the entry of the Preliminary Injunction in 2007. Defendant Rodríguez testified that he complied fully with the Preliminary Injunction and stopped selling the prohibited products.

### III. CONCLUSIONS OF LAW

#### A. Statutory Damages

Plaintiff Coquico has elected to seek statutory damages in lieu of actual damages. The Copyright Act provides:

> the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

17 U.S.C. § 504(c)(1). In cases of willful infringement, the statute permits an award of up to $150,000.00. Id. at 504(c)(2). Statutory damages are not intended to be merely compensatory. Instead, the "statutory award is also meant to discourage wrongful conduct." Venegas-Hernández v. Sonolux Records, 370 F.3d 183, 195 (1st Cir. 2004) (quoting Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 113-14 (2d Cir. 2001)).

CIVIL NO. 07-1432 (JP)          -6-

In the instant case, the Court finds that Defendants Identiko and Rodríguez infringed Plaintiff's copyrights and that Plaintiff is therefore entitled to recover damages. On the basis of the evidence presented at trial, the Court finds that a statutory damages award of $15,000.00 is appropriate under the circumstances.

**B.   Sanctions for Ongoing Infringement**

As discussed above, the parties disputed the factual question of whether Defendants violated the Preliminary Injunction by continuing to sell copies of Coquico products after October 15, 2007. The dispute regarding ongoing infringement turns upon an underlying dispute regarding the precise scope of the Preliminary Injunction. Defendants argue that the Preliminary Injunction prohibited ongoing sales of one particular stuffed toy, the regular sized coquí común. Plaintiff, by contrast, contends that the Preliminary Injunction prohibited sales of products similar to any of those in Plaintiff's coquí line of products. Said line includes stuffed coquí frogs of different sizes, with and without suction cups, a backpack, and a keychain. At trial there was no evidence of ongoing sales of the regular size coquí común, but there was some evidence of ongoing sales of other products from the line such as the keychain.

The Court's Opinion and Order (No. 47) imposing the Preliminary Injunction focused on the regular size coquí común when analyzing the

CIVIL NO. 07-1432 (JP)          -7-

likelihood of success on the merits.  In said analysis, the Court found that:

> The parties' coquís are nearly identical in appearance. They are in the same posture and are approximately the same size. The eyes on the two coquís are approximately the same distance apart, and the stitching between the eyes and the nose and mouth area is very similar.

(No. 47 at 9.)  Although this statement indicates a focus on a single product of the same size from each party, other language in the Opinion and Order supports Plaintiff's broader reading of the scope of the Preliminary Injunction.  In particular, the specific mandate of the Injunction provided:

> Defendants, their agents, servants, and related companies, shall be enjoined from infringing Plaintiff's aforesaid copyrights for Plaintiff's stuffed toy coquí line in any manner including, but not limited to, manufacturing, displaying, distributing, offering for sale, selling, shipping, or delivering, infringing copies of Plaintiff's copyrighted works, products and merchandise.

(No. 47 at 15.)  By referring to the "coquí line," and prohibiting infringement of "Plaintiff's copyrighted works," this language indicates that the Injunction applied to products other than just the regular size coquí común toy.  Considering all of the language in the Preliminary Injunction Opinion and Order as a whole, the Court finds that some ambiguity exists as to the scope of products which are prohibited by the Injunction.

In order to find that a party is in contempt of the Court's Order, the Court must determine by clear and convincing evidence

CIVIL NO. 07-1432 (JP)          -8-

that: (1) the contemnor had notice of the court order; (2) the order was "clear, definite, and unambiguous"; (3) the contemnor had the ability to comply with the order; and (4) the contemnor violated the order. United States v. Saccoccia, 433 F.3d 19, 26 (1st Cir. 2005). When considering a finding of contempt, any ambiguities in the original order should be construed in favor of the person alleged to have violated said order. AccuSoft Corp. v. Palo, 237 F.3d 31, 47 (1st Cir. 2001).

In the instant case, the Court must resolve the ambiguity regarding the scope of the Preliminary Injunction in favor of Defendants. In addition, the evidence that was presented regarding ongoing sales was not clear and convincing proof of ongoing sales by Defendants of any products from Plaintiff's coquí line. Therefore, the Court will not impose sanctions for alleged violations of the Preliminary Injunction.

However, the Court warns Defendants that their reading of the Preliminary Injunction is a strained interpretation. Defendant should heed the precise language of the sentences establishing the prohibited conduct, rather than focus on other parts of the Court's Opinion and Order (No. 47) that may support a conveniently narrow interpretation of the prohibited activities. The Court clarifies now that the prohibitions established in the Injunction apply to copies of any of the products in Plaintiff's coquí line, not just the

CIVIL NO. 07-1432 (JP)             -9-

regular size coquí común.  Defendants shall immediately cease any such sales that may be ongoing.

## IV. <u>CONCLUSION</u>

In conclusion, the Court finds that Plaintiff is entitled to recover $15,000.00 in statutory damages from Defendants.  A separate judgment will be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 19th day of August, 2010.

s/Jaime Pieras, Jr.<br>
JAIME PIERAS, JR.<br>
U.S. SENIOR DISTRICT JUDGE